O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENNETT DEVERMONT, ) | Case No. CV 12-06772 DDP (MRWx) |
| ) | |
| Plaintiff, ) | **ORDER GRANTING IN PART AND** |
| ) | **DENYING IN PART DEFENDANTS'** |
| v. ) | **MOTION FOR SUMMARY JUDGMENT** |
| ) | |
| CITY OF SANTA MONICA, CHIEF ) | [Dkt. No. 28] |
| TIM JACKMAN, OFFICER KOBY ) | |
| ARNOLD ID #3347, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Presently before the Court is Defendants' motion for summary judgment, or alternatively, summary adjudication (the "Motion"). For the reasons stated in this Order, the Motion is GRANTED IN PART and DENIED IN PART.

**I. Background**[1]

This action arises out of a traffic stop. Plaintiff Sennett Devermont ("Plaintiff") was driving in the City of Santa Monica on December 23, 2011, when he was pulled over by Defendant Koby Arnold ("Arnold"), an officer with the Santa Monica Police Department, at

---

[1] This section contains only a basic overview of the facts in this case. The specific factual disputes at issue in this Motion are contained in the discussion of those disputes in subsequent sections.

around 10:00pm. (Plaintiff's Statement of Undisputed Facts ("SUF"), Docket No. 37, ¶¶ 3-4.) Plaintiff was initially pulled over for making an illegal right turn on a red light from Centinela Avenue to Santa Monica Boulevard, an intersection where signs are clearly posted prohibiting such a turn. (Id. ¶¶ 5, 7.)

After Plaintiff pulled over into a Starbucks parking lot, Arnold asked Plaintiff for his license and registration and told him that he was pulled over for making an illegal right turn. (Id. ¶¶ 22, 26.) Arnold also asked Plaintiff whether he had consumed any alcohol or medication earlier that evening. (Id. ¶¶ 28-29.) Plaintiff responded that he had not. (Id.) Arnold then asked Plaintiff to perform standard field sobriety tests ("FSTs"). (Id. ¶¶ 31-33.) Plaintiff immediately asked Arnold what he was doing and whether he was required to take the tests. (Id.) Arnold told him that he had to take the tests, but Plaintiff stated that he didn't think he was required to and refused to submit to the tests. (Id.) Arnold told him that if he refused to submit to the tests, Plaintiff would be arrested for driving under the influence. (Id. ¶ 33.) Plaintiff continued to refuse to take the tests. (Id. ¶ 34.) Arnold then told Plaintiff to step out of his car and arrested him. (Id. ¶ 36.)

After he was arrested, Plaintiff was taken to the Santa Monica Police Department and placed in jail. (Id. ¶ 43.) A blood sample was collected from Plaintiff. (Id. ¶ 42.) While Plaintiff was there, his brother, an attorney, attempted to visit Plaintiff but was denied admission because he did not have his current California Bar card with him to identify himself as an attorney. Plaintiff was

ultimately released. (Id. ¶ 43.) Plaintiff was never charged with any crime.

Plaintiff brought this action against Arnold, the City of Santa Monica ("City"), and City Police Chief Tim Jackman ("Jackman"). Plaintiff brings claims against Defendants under 42 U.S.C. § 1983 for excessive force, false arrest, retaliation for exercise of First Amendment rights, and violation of Sixth Amendment right to counsel, including Monell claims against the City and Jackman. (See Complaint, Docket No. 1.) Defendants now seek summary judgment as to all claims. (Docket No. 28.)

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

A. <u>Withdrawn Claims</u>

As a preliminary matter, the Court notes that Plaintiff "withdraws" his Monell claims against Defendants Jackman and City. (See Opp., Docket No. 36, p. 2.) As a result, no claims remain

4

against the City. Therefore, the Motion is GRANTED with respect to Plaintiff's claims against the City and with respect to claims against Jackman in his official capacity.

### B. Claims Against Defendant Jackman

As noted, Plaintiff has dismissed all claims against Jackman in his official capacity. To the extent that Plaintiff seeks to assert any of his claims against Jackman in his individual capacity, Plaintiff has not provided any evidence that Jackman was personally involved in any aspect of the alleged violations. There is no evidence that Jackman was involved in the initial traffic stop, arrest, drawing of the blood sample, or detention in jail. Therefore, the Court GRANTS the Motion to the extent that Plaintiff asserts any causes of action against Jackman individually. The Court's remaining analysis, therefore, will address only whether there is a genuine issue of fact as to whether Defendant Arnold violated Plaintiff's constitutional rights.

### C. False Arrest/Unreasonable Seizure Claim

In order to arrest an individual without a warrant, the Fourth Amendment requires that a law enforcement officer have probable cause to believe that the individual has committed a crime. See, e.g., Tennessee v. Garner, 471 U.S. 1, 7 (1985). The test for whether probable cause exists is whether "at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." United States v. Bernard, 623 F.2d 551, 559 (1980) (internal quotations and citations omitted). "A determination as to whether probable

cause exists requires a 'practical, common-sense' decision based on the totality of the circumstances." United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005) (citing Illinois v. Gates, 462 U.S. 213, 214 (1983)).

Defendant Arnold clearly had probable cause to initiate the traffic stop. It is undisputed that he observed Plaintiff make an illegal right turn on red from Centinela Avenue to Santa Monica Boulevard. (SUF ¶ 4.) This act alone makes the initial stop objectively reasonable under the circumstances. See Whren v. United States, 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

The primary issue is whether Arnold had probable cause to effect an arrest of Plaintiff, handcuff him, and take him to jail. This inquiry involves a determination as to whether Arnold had probable cause to believe that Plaintiff was driving under the influence, in violation of Cal. Vehicle Code § 23152. It is undisputed that Plaintiff continued to drive from the intersection of Wellesley and Santa Monica, where Arnold turned on his lights and siren, to the intersection of Bundy and Santa Monica before pulling into a Starbucks parking lot and stopping his vehicle. (SUF ¶ 8.) It is undisputed that there was ample space for Plaintiff to pull over to the side of the road along Santa Monica Boulevard; however, Plaintiff claims that he pulled over "in the first available spot he could find after noticing the Defendant's lights." (SUF ¶ 10.) It is also undisputed that Plaintiff had "no idea" what time it was when asked by Arnold. (SUF ¶ 37.)

It is undisputed that Arnold asked Plaintiff whether he had had anything to drink and that Plaintiff said he had not. (SUF ¶ 28.) It is also undisputed that Arnold asked Plaintiff whether he had taken any medication and that Plaintiff responded "No." (SUF ¶ 29.) However, Arnold states that Plaintiff's response included a change in inflection such that his answer to this question was "No?" rather than "No." (Id.) The audio recording supports that Plaintiff's inflection was slightly different than his "No" response to Arnold's question regarding alcohol; however, Arnold followed up on Plaintiff's initial response by asking him to clarify, to which Plaintiff plainly responded "No."

After answering these questions, it is undisputed that Plaintiff refused to take any standard field sobriety tests. (SUF ¶¶ 31, 33.) Arnold then told Plaintiff that if he refused to take any FSTs, Arnold would take him to jail. Arnold stated that "if I can't examine you, then I'm going to say you're drunk" and that he would take him to jail if he refused the tests "because I have nothing else to go on." (See Transcript of Audio Recording, Docket No. 29, Exh. E, at 3:8-3:15.) Arnold said that he was "assuming [Plaintiff was] drunk based on [Plaintiff's] appearance." (Id. at 3:15.)

However, whether Plaintiff's appearance actually supported the inference that Plaintiff was under the influence of alcohol or drugs is the subject of factual dispute. According to the arrest report, completed approximately 4 hours after the initial traffic stop and arrest, Arnold noted that Plaintiff's speech was "slurred," his face was "pale," his eyes were "bloodshot/watery," and his attitude was "antagonistic." (Docket No. 29, Exh. F.)

7

However, the audio recording of the incident does not contain any slurred speech that the Court can detect, and Plaintiff denies that any of his speech was slurred.[2] Plaintiff also disputes that his eyes were bloodshot and watery.[3] Further, it is Arnold who sounds more "antagonistic" in the audio recording than Plaintiff; Plaintiff simply and calmly asserts his right not to perform any FSTs.

Further, it is undisputed that Plaintiff stated that he "never turned right" when Arnold told him that he had been pulled over for making an illegal right turn. (SUF ¶ 23.) However, the evidence shows that Plaintiff soon remembered that he had previously taken a right turn after the officer explained that he had done so several blocks back. (See SUF ¶ 24.) Arnold also claims that Plaintiff made a "wide turn" from Santa Monica onto Bundy before pulling into the Starbucks parking lot and that Plaintiff parked diagonally across a handicapped space in that lot. (Arnold Decl. ¶¶ 6-7.) However, there is no mention in the police report of the "wide turn" or of parking halfway across a handicapped spot, and Plaintiff disputes these facts.

---

[2] Slurred speech involves a failure of enunciation such that the words are not pronounced clearly or properly. Plaintiff's speech on the audio recording is clear, although it could be characterized as slightly slow or "out of it." However, Defendants do not make the argument that this characteristic of speech is indicative of or consistent with being under the influence of alcohol or drugs, nor that an objectively reasonable officer would rely on this speech characteristic to support a DUI arrest.

[3] Plaintiff has submitted a mugshot of Plaintiff, taken by the City after Plaintiff was arrested, that he cites in support of his contention that his eyes were not bloodshot. (See Docket No. 54, Exh. 5.) Plaintiff's opposition papers refer to this "color" photograph, but Plaintiff has failed to provide the Court with a color copy of the photograph, either in hard copy or on the electronic docket.

8

Taking the facts in the light most favorable to Plaintiff, the only indicators that Plaintiff was driving under the influence are his illegal right turn on red, his failure to pull over more quickly after Arnold turned the sirens on, and the fact that Plaintiff did not know what time it was. Plaintiff explained to Arnold that he was "lost"; this is a reasonable explanation for his slightly erratic driving. Plaintiff raises factual disputes as to whether he exhibited any physical symptoms that might indicate intoxication, such as slurred speech, pale face, and bloodshot or watery eyes. Further, it is undisputed that Arnold did not smell or otherwise detect the presence of alcohol or drugs during the initial stop, and Plaintiff answered "no" when asked whether he had consumed any alcohol or medication that day.[4] Further, the Court finds that Plaintiff's refusal to take any field sobriety tests under the circumstances does not, along with the other undisputed facts, create probable cause. See Thompsen v. Breshears, 2009 WL 2581556, at *9 (E.D. Wash. 2009) (finding that poor driving, fumbling of registration, watery and bloodshot eyes, and refusal to complete additional FSTs was not enough to establish probable cause for officer to arrest for DUI). Therefore, the Court finds that there is a genuine issue of material fact regarding whether Arnold had probable cause to arrest Plaintiff for driving under the

---

[4] Nearly every case that the Court could find in which summary judgment was granted in favor of defendants under similar circumstances involved either (1) an undisputed odor of alcohol or drugs emanating from the vehicle or the individual, or (2) an admission by the individual that he or she had recently consumed at least some alcohol or drugs. See, e.g., McKay v. Morris, 438 F.Appx. 631, 632 (9th Cir. 2011). In this case, such facts are entirely absent.

9

influence. The resolution of this issue will turn on the credibility of the parties. The Motion is DENIED as to this claim.

D. <u>Excessive Force Claim</u>

There are two potential acts that Plaintiff may allege constituted excessive force. First, Plaintiff claims that excessive force was used in handcuffing him. Second, Plaintiff claims (although Defendants dispute that Plaintiff ever clarified that he was making this claim) that having his blood drawn constituted excessive force.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Graham</u>, 490 U.S. at 396; <u>see also</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 20-22 (1968).

Because the Court finds that there is a genuine issue of material fact as to whether Arnold had probable cause to arrest Plaintiff, there is also an issue of fact as to whether the amount of force used was reasonable under the circumstances. Any use of force was excessive if Arnold did not have probable cause to arrest Plaintiff; even if Arnold used normal handcuffing procedures, the use of handcuffs was excessive if there was no probable cause for the arrest. <u>See</u> <u>Thornton v. City of Macon</u>, 132 F.3d 1395, 1400 (11th Cir. 1998) ("Under the circumstances, the officers were not

10

justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive."); see also Smith v. Appledorn, 2103 WL 451320 (D. Minn. 2013) (finding that where a seizure of an individual was unreasonable, "any use of force in the course of the seizure would also have been unreasonable"). Further, if there was no probable cause to believe that Plaintiff was driving under the influence, then Arnold was not entitled to require Plaintiff to submit to a blood test, and the test therefore may constitute excessive force. See Cal. Vehicle Code § 23612(a) (blood testing authorized under this section must be "incidental to a lawful arrest"); see also People v. Trotman, 214 Cal.App.3d 430, 437-38 (1989). Therefore, the Motion is DENIED as to this claim.

### E. First Amendment Retaliation Claim

In order to prove a claim for retaliation for exercising First Amendment rights, a plaintiff must show (1) that the defendant "took action that would chill or silence a person of ordinary firmness from future First Amendment activities" and (2) the defendant's "desire to cause the chilling effect was a but-for cause of the defendant's action." Skoog v. County of Clackamas, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (internal quotation marks omitted).

Construing the facts in the light most favorable to Plaintiff, Arnold did not have probable cause to arrest Plaintiff for driving under the influence. In the absence of probable cause to effect an arrest for DUI, Arnold had no legitimate justification for arresting Plaintiff. Arnold's declaration states that he arrested Plaintiff not for refusing to take any field sobriety tests, but

11

because Arnold believed he had probable cause to arrest Plaintiff for driving under the influence. (Arnold Decl. ¶ 18.) However, Arnold's statements (as cited above) and demeanor on the audio recording of the incident could be interpreted by a reasonable jury to support the conclusion that Arnold arrested Plaintiff in retaliation for his refusal to submit to any FSTs. Telling an individual that he will be arrested if he continues to verbally assert his refusal to take any FSTs is likely to have a chilling effect on that person asserting his right to refuse in the future. Further, a reasonable jury could conclude, based on the exchange between Arnold and Plaintiff, that Arnold desired to chill Plaintiff's speech by threatening arrest if he did not cease his objections and submit to the FSTs. Therefore, the Court DENIES the Motion with respect to this claim.

F. Sixth Amendment Right to Counsel Claim

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 (1972). "It is this point ... that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." Id. at 690; see also Brewer v. Williams, 430 U.S. 387, 398 (1977).

Here, there are no facts offered by any party that indicate that formal adversary proceedings were ever commenced against

Plaintiff arising out of the incident at issue. Plaintiff was pulled over, arrested, and placed in jail for a period of time. However, it appears that at no time were any formal charges filed, nor even a citation issued, based on the incident. As a result, no right to counsel under the Sixth Amendment ever attached. Therefore, any Sixth Amendment right to counsel claim brought by Plaintiff necessarily fails. The Court GRANTS the Motion with respect to Plaintiff's Sixth Amendment claim.[5]

### G. Due Process Claim

Plaintiff's opposition does not specifically address Defendants' arguments regarding any purported due process claim that Plaintiff might be asserting in this action. It is unclear from the pleadings whether Plaintiff intends to assert a due process claim, and as Plaintiff has failed to oppose the argument offered by Defendants as to any such claim, the Court GRANTS the Motion as to any due process claim Plaintiff intends to assert.

### H. Qualified Immunity

Determining whether an officer is entitled to qualified immunity involves two inquiries: (1) whether a constitutional right was violated and (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 200 (2001); Pearson v. Callahan, 555 U.S. 223, 227 (2009).

---

[5] Further, Plaintiff has dropped his Monell claims, and there is no indication that either Arnold or Jackman had any personal involvement in the decision not to allow Derek Devermont, an attorney and Plaintiff's brother, to visit Plaintiff while he was in jail. Therefore, even if Plaintiff's Sixth Amendment rights had attached, such rights were not violated by the remaining Defendants in this action.

13

The Court finds that Arnold is not entitled to qualified immunity at this time. Construing the facts in the light most favorable to Plaintiff, Arnold had no probable cause to arrest Plaintiff, meaning that Plaintiff's constitutional rights were violated. Moreover, Plaintiff's version of the facts involves limited factual support for Arnold's conclusion that he had probable cause to arrest Plaintiff for driving under the influence.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS the Motion with respect to all claims against City and Jackman and GRANTS the Motion as to Plaintiff's Sixth Amendment claim and as to any due process claim that Plaintiff may have intended to assert. However, the Court DENIES the Motion with respect to Plaintiff's claims against Arnold for false arrest, excessive force, and First Amendment retaliation.

IT IS SO ORDERED.

Dated: July 1, 2014

DEAN D. PREGERSON
United States District Judge